No. 34,362

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., *Appellants*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*.

(95 P. 2d 554)

Opinion filed November 10, 1939.

*W. W. Brown*, of Parsons, *W. F. Lilleston*, of Wichita, *W. P. Waggener*, *B. P. Waggener*, *O. P. May*, *Ralph Hope*, all of Atchison; *J. E. DuMars*, *Clayton E. Davis*, *T. M. Lillard*, *O. B. Eidson*, *Philip H. Lewis*, *Bruce Hurd*, *C. J. Putt*, *R. M. Clark*, all of Topeka; *W. E. Davis*, of Kansas City, Mo., and *George W. Holmes*, of St. Louis, Mo., for the appellants.

*Harold Medill*, of Independence, and *John F. Jones*, of Topeka, for the appellee.

*J. W. Blood*, of Wichita, as *amicus curiae*.

The opinion of the court was delivered by

SMITH, J.: This was an appeal to the district court pursuant to G. S. 1935, 66-118c, from an order of the corporation commission.

Judgment was for the commission sustaining the order. The appellants in the court below appeal to this court.

The order from which the appeal was taken was one fixing minimum intrastate rates to be charged by contract motor carriers in the state. The appellants are the common carriers by rail. The proceedings were instituted pursuant to the provisions of chapter 229 of the Laws of 1933 and chapter 236 of the Laws of 1931, now appearing as G. S. 1935, 66-1,108 to 66-1,112g. Since the decision turns largely upon the interpretation to be given the above sections, they will be set out here at the outset.

G. S. 1935, 66-1,108 contains, among other provisions, certain definitions in which we are interested. They are as follows:

"The term 'public motor carrier of property' when used in this act shall mean any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle, from place to place, the property of others who may choose to employ him. (*f*) The term 'public motor carrier of passengers' when used in the act shall mean any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle, from place to place, persons who may choose to employ him. (*g*) The term 'contract motor carrier of property' when used in this act shall mean any person engaged in the transportation by motor vehicle of property for hire and not included in the term 'public motor carrier of property' as herein defined."

The next section provides for the exemption of certain contract motor carriers from the provisions of the act. G. S. 1935, 66-1,110, provides that public motor carriers of property or passengers shall be common carriers.

Section 66-1,111 provides that certain carriers must comply with the act.

G. S. 1935, 66-1,112, confers authority on the commission to license, supervise and regulate public motor carriers.

G. S. 1935, 66-1,112a through 66-1,115, will be set out in full. These sections provide as follows:

"Upon the filing of an application for a permit and compliance with all lawful requirements, the commission is hereby vested with power and authority to grant permits to contract motor carriers; to supervise and regulate such motor carriers for the purpose of promoting safety upon the highways and the conservation of their use; to regulate and supervise the accounts and method of operation of same; to prescribe such rules and regulations as it may deem necessary to carry out the provisions of this act; and to supervise and regulate all contract motor carriers of property or of passengers and all matters affecting the relationship between such motor carriers and the traveling and shipping public and other carriers." (G. S. 1935, 66-1,112a.)

"The commission, upon the filing of an application for contract-carrier permit, shall fix a time and place for hearing thereon, which shall be not less than ten days after such filing. The commission shall cause notice of such hearing to be served at least five days before the hearing upon an officer or owner of every common carrier that is operating, or has applied for a certificate to operate, in the territory proposed to be served by the applicant, and on other interested parties as determined by the commission, and any such common carrier or interested party is hereby declared to be an interested party to said proceedings and may offer testimony for or against the granting of such permit. Any other interested person may offer testimony at such hearing. The commission is hereby vested with power and authority to grant or deny the permit prayed for, or to grant it for the partial exercise only of the privilege sought, and may attach to the exercise of the privilege granted by such permit such terms and conditions as in its judgment will carry out the purposes of this act. Application for such permit shall be made in writing, stating the ownership, financial condition, equipment to be used and physical property of the applicant, and contain such other information as the commission may require." (G. S. 1935, 66-1,112b.)

"That no permit issued under the authority of this act shall be subject to assignment or transfer, and no permit issued in accordance with the terms of this act shall be construed to be either a franchise or irrevocable. Every contract motor carrier of property or passengers, or private motor carrier of property, who shall cease operation and abandon his rights under the permits issued shall notify the commission within thirty days of such cessation or abandonment. Subject to any right a holder of such permit may have to engage in interstate commerce, no permit issued in accordance with the terms of this act shall be construed to be irrevocable. The commission may at any time, for good cause, suspend or revoke such permit upon five days' notice to the grantee of any permit, and an opportunity to be heard." (G. S. 1935, 66-1,112c.)

"It is hereby declared that the business of contract motor carriers is affected with the public interest, and that the safety and welfare of the public, the preservation and maintenance of the public highways and the integrity of the regulation of common carriers require the regulation of contract motor carriers to the extent herein provided." (G. S. 1935, 66-1,112d.)

"Every contract motor carrier operating in competition with one or more common carriers is hereby forbidden to give or cause any undue or unreasonable advantage or preference to those whom he serves, as compared with the patrons of any public motor carrier, as that term is used in this act, or the patrons of any other common carrier or to subject the patrons of any such common carriers to any undue or unreasonable discrimination or disadvantage, or by unfair competition to destroy or impair the service or business of any public motor carrier, as that term is used in this act, or of any other common carrier, or the integrity of the state's regulation of any such service or business; and to the end that the said commission may enforce these provisions, each such contract motor carrier shall maintain on file with the commission a statement of his charges and of such other matters as the commission may require." (G. S. 1935, 66-1,112e.)

"The commission is hereby vested with power and authority and is hereby made its duty to prescribe rules and regulations covering the operations of

contract motor carriers in competition with common carriers of this state, and the commission shall prescribe minimum rates, fares and charges to be collected by such contract motor carriers." (G. S. 1935, 66-1,112f.)

"The commission is hereby vested with power and authority and it shall be its duty to issue permits to private motor carriers of property, to require the filing of annual and other reports, and such additional data as may be required by the commission in carrying out the provisions of this act. The commission shall have power and authority, by general order or otherwise, to prescribe reasonable and necessary rules and regulation governing all private motor carriers of property." (G. S. 1935, 66-1,112g.)

"All transportation charges made by any public motor carrier shall be just and reasonable." (G. S. 1935, 66-1,113.)

"It shall be unlawful for any public motor carrier to operate as a carrier of intrastate commerce within this state without first having obtained from the public service commission a certificate of convenience and necessity. The public service commission, upon the filing of application for such certificate, shall fix a time and place for hearing thereon, which shall not be less than twenty nor more than thirty days after such filing. The public service commission shall cause a copy of such application and notice of hearing thereon to be served at least ten days before the hearing upon an officer or owner of every common carrier that is operating or has applied for a certificate to operate in the territory proposed to be served by the applicant, and on the city clerk of every city into or through which said motor carrier may desire to operate; and any such common carrier or city is hereby declared to be an interested party to said proceedings and may offer testimony for or against the granting of such certificate, and any other interested person may offer testimony at such hearing. If the commission finds from the evidence that the proposed service or any part thereof will promote the public convenience and necessity, the commission shall issue the certificate; otherwise such certificate shall be denied. Before granting a certificate to a public motor carrier, the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate." (G. S. 1935, 66-1,114.)

"It shall be unlawful for any 'contract motor carrier of property or passengers' or 'private motor carrier of property' to operate as a carrier of property or passengers within this state either in intrastate commerce or in interstate commerce without first having obtained from the public service commission a license therefor. An application shall be made to the public service commission in writing stating the ownership, financial condition, equipment to be used and physical property of the applicant, and such other information as the commission may request. Upon receipt of such information and on compliance with the regulations and payment of fees, the public service commission shall issue a license to such applicant." (G. S. 1935, 66-1,115.)

It will be noted that G. S. 1935, 66-1,112f, directs the commission to prescribe minimum rates to be collected by contract carriers.

Pursuant to this section, the commission proceeded to give notices and to have a hearing during September, 1933. Certain common carriers were represented at this hearing. Evidence was introduced before the commission on the question of what the contract rate should be. On April 7, 1934, as a result of this hearing, an order was issued by the commission fixing the minimum rates for contract motor carriers at seventy-five percent of the lowest "less than carload rates" contemporaneously maintained by common carriers on the same commodities and between the same points before the deduction of allowances. The common carriers made a motion for rehearing, which was denied. On June 7, 1934, the commission on its own motion opened the proceedings for further hearings. Hearings were had during October, 1934. Pursuant to this hearing the commission made the order, which is the subject of this appeal. This order was as follows:

"It is therefore on this 13th day of June, 1935, by the commission ordered: That contract motor carriers of property, operating in competition with common carriers between points in the state of Kansas, be, and they are hereby notified and required to collect charges not less than those obtained by applying to the actual weight of each shipment the following minimum rates:

"(a) On all shipments weighing 5,000 pounds or more, between points served by rail, the railroad carload rates: *Provided,* That in cases where the shortest railroad mileages exceed the highway mileages via the shortest practicable routes, by more than thirty percent, and lower rates are obtained by applying such highway mileages to the lowest railroad scale of rates applicable to the destination involved, then such lower rates shall apply: *Provided further,* That when such shipments consist of more than one kind or class of articles the actual weight of each of the differently rated articles shall be subject to the rate applicable on such articles in straight carloads.

"(b) On shipments of livestock, weighing less than 5,000 pounds, between points served by rail, rates constructed by adding five cents per one hundred pounds to the railroad carload rates on the same kind, or kinds, of livestock: *Provided,* That in cases where the shortest railroad mileages exceed the highway mileages via the shortest practicable routes by more than thirty percent, and lower rates are obtained by adding five cents per one hundred pounds to the rates secured by applying such highway mileages to the lowest railroad scale of rates applicable to the destination involved, then such lower rates shall apply.

"(c) On shipments weighing less than 5,000 pounds, consisting of traffic other than livestock, between points served by common carriers, eighty percent of the lowest less-carload rates now maintained by common carriers by motor vehicle and/or by rail on the same commodities between the same points before such common carriers deduct any allowances: *Provided,* That in cases where the shortest common carrier mileages exceed the highway mileages via the shortest practicable routes, by more than thirty percent, the rates shall be

eighty percent of the rates obtained by applying such highway mileages to the scale of rates applicable via common carriers between the points involved. The above term 'shortest common carrier mileages' shall mean the distances used in determining such lowest less-carload common carrier rates.

"(d) On all shipments of livestock, and on shipments of other traffic, weighing 5,000 pounds or more, from, to or between points not served by rail, the additional charges set forth in Appendix A hereto shall be added.

"(e) On shipments weighing less than 5,000 pounds, consisting of traffic other than livestock, from, to or between points not served by common carriers, the additional charges set forth in Appendix B hereto shall be added."

Special attention is directed to paragraph (c) of the above order, since the provisions of that paragraph are "under fire" here. It will be noted that the minimum rate fixed for contract carriers in this period on shipments weighing less than 5,000 pounds is eighty percent of the lowest less-carload rate at that time maintained by common carriers by motor or rail on the same commodities between the same points.

Pursuant to G. S. 1935, 66-118c, the common carriers by rail sought to have this order reviewed in the district court of Shawnee county. The grounds upon which this review was sought were as follows:

1. That the order is unlawful, unreasonable, and contrary to the provisions of section 8, chapter 229, Laws of 1933 (66-1,112e, G. S. 1935) because it gives undue and unreasonable advantage or preference to patrons of the contract motor carriers over patrons of the railroads.

2. That the unreasonable advantage given the contract motor carriers is so great as to deny to the railroads equal protection of the law and to deprive them of their property without due process of law, contrary to the constitution.

3. That the Kansas intrastate business lost by the railroads through these discriminatory rates will injure and impair the ability of the railroads to conduct their interstate operations and will thus be a burden upon interstate commerce.

4. The order is arbitrary and unreasonable.

5. The findings of fact are not supported by the evidence.

6. The order is contrary to law.

The trial court found against the contentions of the appellants and sustained the order of the commission, hence this appeal.

The first point argued by the appellants here is that the order of the commission creates and necessitates an unreasonable discrimination and undue preference against common carriers and their patrons. In this argument special stress is laid on the provisions of G. S. 1935, 66-1,112e. The appellants point out that the less than carload rate for flour between Topeka and Emporia is 29 cents per hundred, so that the charge for 2,000 pounds of flour moving by rail from

Topeka to Emporia is $5.80; that this is a fixed rate; the railroad must charge this rate—no more, no less—while under the commission's order a contract carrier can carry the same 2,000 pounds of flour for 80 percent of this rate, or $4.64.

Appellants then state in their brief:

"1. If a contract carrier may haul 2,000 pounds of flour from Topeka to Emporia for $4.64 as against $5.80 required to be charged by common carriers, does the contract carrier give his patron an undue or unreasonable advantage or preference, as compared with a similar patron of a common carrier? If the answer is affirmative, and no other answer seems logical, the commission's order is void.

"2. If a contract carrier may haul 2,000 pounds of flour from Topeka to Emporia for $4.64 as against $5.80 required to be charged by common carriers, does the contract carrier subject the patrons of common carriers to undue or unreasonable discrimination or disadvantage? If the answer is affirmative, and it certainly must be, the commission's order is void.

"3. If a contract carrier may haul 2,000 pounds of flour from Topeka to Emporia for $4.64 as against $5.80 required to be charged by common carriers, does the contract carrier by unfair competition destroy or impair the service or business of common carriers? If the answer is affirmative, and that seems obviously to be the only answer, the commission's order is void.

"4. If a contract carrier may haul 2,000 pounds of flour from Topeka to Emporia for $4.64 as against $5.80 required to be charged by common carriers, does the contract carrier destroy or impair the integrity of the state's regulation of common carriers? If the answer is affirmative, the commission's order is void."

Does the record in this case require that the answers of the above questions should be in the affirmative? In the first place, it must be remembered that the commission is not given the authority to fix rates for contract carriers. It may only fix minimum rates. Hence, the contract carriers are not compelled to haul the 2,000 pounds of flour from Topeka to Emporia for $4.64. They may charge under the law and the order of the commission any price they wish to charge, just so they do not charge less than $4.64.

The rate on flour between Topeka and Emporia is only one of a myriad of examples of transportation charges. The railroads maintain tariffs of charges on different commodities between many shipping points in the state. The question of whether a certain rate is discriminatory or gives certain patrons an undue preference cannot be settled in a general hearing such as this. Before this court could answer the questions propounded by appellant in the affirmative, and that G. S. 1935, 66-1,112e, is violated thereby, it would be necessary that it appear not only that the contract carriers could carry

2,000 pounds of flour from Topeka to Emporia for $4.64 while the railroads must charge $5.80, but it must appear that the contract carriers actually are carrying it at that rate. In addition, it would have to appear that other conditions and circumstances were comparable. Discrimination and undue preference do not depend on rates alone. There are other elements that must be considered.

There is a field in which G. S. 1935, 66-1,112e, was intended to and can operate apart from G. S. 1935, 66-1,112f. Had the latter section never been enacted, the commission could on proper complaint have considered the question of discrimination and undue preference on the part of contract carriers under the provisions of G. S. 1935, 66-1,112e. We are not holding here that the rate on flour to which reference has been made under certain circumstances could not be a violation of G. S. 1935, 66-1,112e. What we do hold is that the question of whether it is a violation cannot be settled in a hearing the purpose of which is to fix a minimum rate. Some attention is paid in the brief of appellants to the fact that many of those claiming to be contract carriers are in reality common carriers and subject to the regulations and rates governing common carriers. This also is a question which should be called to the attention of the commission in a particular case. It cannot be settled in a hearing such as this.

The next question argued by appellants is that there is no evidence of a state-wide identity of conditions to justify a state-wide identity of contract-carrier rates or a blanket order, and the order was made without sufficient evidence to support its finding that contract-carrier rates should be related to common-carrier rates. Here again it must be remembered that the commission did not fix a rate, but only fixed a minimum rate. The commission heard evidence from contract carriers from different parts of the state and operating under various circumstances. There was some evidence on the question of the cost of service. The evidence could not in the nature of things be exhaustive and cover every case of a contract carrier. Had the commission gone into the question of the expenses of every contract carrier in the state, the hearing never would have been completed and the commission would never have had time for its other work. It is not improbable that the legislature had some such an idea in mind when the act was passed providing for the commission's establishing minimum rates rather than fixed rates. The fact is that there are some elements about any freight-rate structure

that must be arbitrary. The history of this country abounds in evidence where cities and industries have flourished or had hard times, depending on the freight-rate structure. There never is exact identity of conditions.

The whole subject of control and regulation of rates for contract carriers is a new one. The order under consideration here is the first attempt at it in this state. The matter is not *res adjudicata*. It can be opened by the commission on its own motion or on complaint of an interested party at any time. We cannot say there was not sufficient evidence to justify the order made.

The judgment of the trial court is affirmed.

Hoch, J., not sitting.